CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 24 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BILLY JOE HAVEN,<br>　　Plaintiff, | )<br>) Civil Action No. 7:07cv00345<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| PARENT COMPANY OF NEW<br>RIVER REGIONAL JAIL, et al.,<br>　　Defendants. | )<br>) By: Hon. Glen E. Conrad<br>) United States District Judge |

Proceeding pro se, plaintiff Billy Joe Haven brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, an inmate at the New River Valley Regional Jail ("NRVRJ"), alleges that defendants have violated his constitutional rights by not conducting "proper" medical screening of inmates prior to placing inmates in the jail's general population. Additionally, he complains that he is placed "at risk" by "overcrowded conditions and poor management of such" and that long-term inmates are improperly held at NRVRJ. Plaintiff seeks injunctive relief. Upon review of the record, the court concludes that the plaintiff has not stated a claim upon which relief may be granted. Therefore, the court will dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).[1]

I.

Plaintiff alleges the following in his "complaint against medical": "there is no real and proper MEDICAL SCREENING of inmates before they are classified and put into general population" because inmates are only required to answer "a questionaire [sic] of their medical history"; inmates "usually live a 'high' risk life-style" and "[m]any are heavy users of alcohal [sic] and drugs, live in poor housing (or no housing) condition's [sic]" and "recive [sic] little or no Regular Health Care";

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

"many inmates that may even know of infection's [sic] diseases they may carry, may be to [sic] ashamed to come forth"; "S.T.D's [sic] are a part of life and many inmates carry them unaware," and "many that are aware tend to keep it to themself's [sic]"; "the closet [sic] that medical comes to a screening" is a physical, given to "a very small part of the general population" who are "in line to become a trustee," "which consists of taking an inmate's blood pressure, giving an eye test with the old wall-type eye chart and an actual TB skin test." Plaintiff states that he inquired about "the screening process here at the jail," and that he was given the response that the "questionaire [sic] was approved by the doctor." Plaintiff adds that "[i]nmate's [sic] that are obviously mentally challenged are also put into the general population with no mental health treatment or assessment" and that "[o]ne of the main enemies of a healthy jail population is an OverCrowded [sic] jail population that is not Properly Managed."

Regarding the "overcrowded conditions and poor management of such," which places himself "and others at risk," plaintiff states that "inmate's [sic] that do not have bunks have to sleep with their mattresses Directly On The Floor," adding that cells in "closed pods" have "two bunks to a cell" and that a "third inmate" in that cell must sleep on a mattress "directly on the concrete floor . . . dangerously close to and below the toilet," and that "[t]here is no way that 'spray' doesn't get on that inmate's 'bed' which leaves him open to hepitis [sic] and other diseases." He states that "the count is approximately the same" in the "dormatory [sic] pods," with "one-third . . . of the inmates [sic] mattresses . . . on the floor." Plaintiff adds that, "[t]o add insult to injury," the jail "administration has had clothing hooks installed in the walls," in the same way they are installed "next to the bunks" to indicate "where each mattress should be placed," rather than "putting in bunks[,] beds[,] or even cots to get a person off the floor." Plaintiff complains that there are

2

insufficient showers, toilets, mirrors, and sinks "[i]n the open pods," which causes a "traffic jam[s]", that showers are not sanitized daily, and that, as a result of "this physical ware housing [sic] . . . infection [sic] diseases are especialy [sic] hard to eradicate." He adds that "Staph Infection is a fact in this facility and has been for three (3) years," that "inmate's [sic] are steadily contracting" staph, and that he knows of no inmates who "came to this facility already infected with" staph. In plaintiff's view, inmates who are diagnosed with staph are "taken to the 'medical' pod," but "[f]ar too many times . . . are put back into population." Plaintiff also alleges that an inmate with tuberculosis was in his "pod for an extended period of times [sic] from November, 2006 to May, 2007," but that the inmate with tuberculosis "was finally moved after many complaints from the inmates."

Plaintiff complains that "[t]he physical structure of this institution, the working phylasiply [sic] of the staff and the lack of programs indicates that this is a HOLDING facility," as "apposed [sic] to a facility where a CONVICTED inmate can serve out his/her sentence." In plaintiff's view, "[d]ue to the afore mentioned [sic] condition[s] . . . along with practicaly [sic] NOTHING to do it is easy to see how this facility is highly stressful and volitile." He states that there are no programs at NRVRJ to "help a convicted felon break his/her cycle or to help them improve themselves," other than "a G.E.D. program for those needing a high school education" and A.A. meetings. He states that inmates, upon entering the jail, are asked "if they would like to go to anger management or job readiness," and that "many inmate's express a willingness to participate," but that "none of these programs have existed since" plaintiff has been at the jail. He adds the following: that there are no "jobs or 'work therapy'" programs for inmates; that "canteen prices are extremely high and rediculous [sic]"; that the use of the law library is "highly discouraged" and that an inmate may not

3

use the library if the inmate has a lawyer"; that there is a "three (3) book limit to each inmate" for books checked out on each month's regular library visit; that outdoor recreation is limited; that "there is literaly [sic] nothing to do but eat, sleep, look at T.V. and stew in negative and stressful juices"; and that "[t]o be sentenced to do state time and forced to do it at this jail is very cruel and very unusual!"

Plaintiff has presented documentation of his attempts to pursue the same generalized claims through the inmate grievance system. At the first stage of the grievance system, plaintiff received the following response: "Mr. Havens, we do our best here to contain contagious organisms. However, if you have any ideas as to how to do it better feel free to share your ideas with me. Remember, though, you have to oversee the mental, physical and safety for more than 650 people." At the second stage of the grievance system, plaintiff received the following response: "We do not hold DOC inmates for long term at this facility. The problem with overcrowding is that people [illegible] on the street and DOC cannot hold the overflow." At the third level, plaintiff received the following response: "No procedural violations noted."

Plaintiff seeks the following relief, which the court quotes from his complaint:

1) Send me and other state inmate's [sic] to a state facility imedialey [sic].

2) An imediote [sic], surprise inspection of this facility to see if minimum federal guidelines are reached.

3) Put this institution directly under federal supervision until it is brought up to code.

4) Do [sic] to this administration's medical policies; [sic] make this jail responsible for any particular disease that an inmate has contracted during their stay at this facility.

5) Order at least two (2) inspection [sic] per year – surprise and scheduled.

4

6) While state inmate's [sic] are housed, order that they are administered under D.O.C. rules and regulation [sic].

7) Make these rules and regulations availible [sic] to all D.O.C. inmate's [sic] imediately [sic] upon status change.

## II.

Construing plaintiff's complaint liberally, the court has determined that plaintiff attempts to state claims alleging the following: the living conditions at NRVRJ violate the Eighth Amendment's prohibition against cruel and unusual punishment; plaintiff was denied medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; and plaintiff has been denied legal assistance in the absence of access to a law library. Plaintiff requests injunctive relief.

### A. Living Conditions

While the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Therefore, to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege, among other things, facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993).

The United States Court of Appeals for the Fourth Circuit stated in Strickler:

The Eighth Amendment does not prohibit cruel and unusual prison conditions; it

5

> prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment.

989 F.2d at 1381.

In the instant case, plaintiff has not demonstrated that conditions are such that he has sustained a serious or significant injury or is at unreasonable risk of serious damage to his future health.[2] See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir.1999) (holding that the plaintiff failed to allege injuries that were "sufficiently serious to be constitutionally actionable," where the plaintiff stated that his exposure to environmental tobacco smoke resulted in breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy); Oliver v. Deen, 77 F.3d 156, 160 (7th Cir. 1996) (finding that evidence of "considerable" medical treatment for asthma related concerns following exposure to smoke did not establish constitutionally significant injury); Alexander v. Tippah County, Miss., 351 F.3d 626, 631 (5th Cir. 2003) (stating that any injury incurred from vomiting and nausea which was not so severe as to require medical intervention or have lasting health effects, was de minimis). In sum, plaintiff has not stated a claim that "'the actual conditions of confinement . . . [at NRVRJ] are cruel and unusual.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (holding that the risk of harm by fire or smoke did not constitute cruel and unusual punishment) (citation omitted).

Plaintiff has not alleged conditions that amount to cruel and unusual punishment and, therefore, fails to state a claim under the Eighth Amendment. Accordingly, the claim will be

---

[2] Moreover, plaintiff acknowledges the adequacy of other living conditions at NRVRJ, e.g., that inmates have the opportunity to obtain high school equivalency diplomas and to check out library books. See Rhodes, 452 U.S. at 347-48 (holding that the double-celling of inmates does not violate the Eighth Amendment when other living conditions are constitutionally adequate).

6

dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).[3]

## B. Medical Claim

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Disagreements between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment are not cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. To bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison physician's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Additionally, an inmate is not entitled to unqualified access to health care; the right to

---

[3] The court notes that plaintiff may have been a pre-trial detainee at some time during his confinement at NRVRJ, and that the claims of a state pre-trial detainee should be evaluated under the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). However, as a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates. Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997) (excessive force); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (medical needs). Conditions of confinement cannot be considered punishment so long as they are rationally connected to a legitimate, nonpunitive penological purpose and are not excessive in relation to that purpose. Bell, 441 U.S. at 535-538. Accordingly, in evaluating the constitutionality of conditions of confinement for pretrial detainees, the court must determine whether the challenged conditions amount to punishment. Id. As the court has explained in the foregoing analysis of plaintiff's Eighth Amendment claim of cruel and unusual punishment, and will further explain in its discussion of plaintiff's medical claims under the Eighth Amendment, plaintiff's constitutional rights have not been violated.

medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Indeed, in the context of short-term prisoners, states may outright deny inmates elective medical treatment. Kersh v. Bounds, 501 F.2d 585, 588-89 (4th Cir. 1974).

Plaintiff has not made any showing that a constitutional right has been violated. Although plaintiff may believe that the institutional staff and medical staff at NRVRJ have been deliberately indifferent to his medical needs by not "screening" other inmates' health to plaintiff's satisfaction before allowing them to come into any degree of proximity to plaintiff, such actions do not rise to the level of a federal constitutional violation. Nor has plaintiff alleged an objectively serious medical need.[4,5] Accordingly, the court finds that plaintiff has failed to state a claim under the Eighth Amendment because he has not shown that institutional or medical staff were deliberately indifferent to any serious medical need or any other substantial risk of serious harm. Farmer, 511 U.S at 833. Nor has he alleged facts sufficient to show a serious or significant mental or physical injury or an unreasonable risk of serious damage to his future health as a result of NRVRJ's medical screening

---

[4] To the extent that as plaintiff's objections to NRVRJ's medical screening policies could be construed to state a claim for medical malpractice against NRVRJ medical personnel, such claim would arise, if at all, under state medical malpractice laws, and does not present a colorable claim under § 1983. See Estelle, 429 U.S. at 105-106.

[5] The court notes that functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). NRVRJ's policy of screening inmates' health does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

policies. Strickler, 989 F.2d at 1380-1381. The claim will be dismissed without prejudice pursuant to 28 U.S.C. §1915A(b)(1).

## C. Law Library

Reasonable access by prisoners to both state and federal courts is a guaranteed right. Ex parte Hull, 312 U.S. 456 (1941); see Procunier v. Martinez, 416 U.S. 396 (1974). States must affirmatively provide inmates with either law libraries or persons trained in law to prosecute habeas and civil rights claims. See Bounds v. Smith, 430 U.S. 817, 828 (1977). In other words, legal assistance is required only in the absence of access to a law library. In this civil rights case, plaintiff concedes that NRVRJ provides access to a law library for those inmates who are not assisted by counsel. Accordingly, the court finds that plaintiff fails to state a claim of inadequate access to legal assistance, and will dismiss his claim without prejudice pursuant to 28 U.S.C. §1915A(b)(1).

## D. Injunctive Relief

A district court should issue preliminary injunctive relief only sparingly, using the "balance of hardship" test. In applying this test, the court should consider four factors: 1) whether the plaintiff will suffer immediate and irreparable harm if the relief is not granted; 2) the likelihood of harm to the defendants if relief is granted; 3) the likelihood that plaintiff will eventually succeed on the merits; and 4) whether the public interest lies with granting the relief. Wetzel v. Edwards, 635 F.2d 283, 286-87 (4th Cir. 1980) (citing Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing, Co., 550 F.2d 189, 195 (4th Cir. 1977)). Functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston, 946 F.2d at 343. Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. Taylor v.

Freeman, 34 F.3d 266, 269 (4th Cir. 1994). Without a showing that plaintiff will suffer imminent, irreparable harm, the court cannot grant interlocutory injunctive relief. Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991). The plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Group, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

The court finds that plaintiff has not alleged facts indicating that he will suffer immediate and irreparable harm in the absence of interlocutory injunctive relief of some kind. Given that plaintiff's allegations do not state any constitutional claim, plaintiff has not established a likelihood that he will eventually succeed on the merits or that the public interest lies with granting the relief. Plaintiff's request for injunctive relief does not satisfy the "balance of hardships" test. Accordingly, plaintiff's request for injunctive relief will be denied.[6]

### III.

Based on the foregoing, the court finds that plaintiff has not presented any claims that constitute a violation of his constitutional rights. Therefore, the court will dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).[7] Additionally, the court will deny

---

[6] Insofar as plaintiff's request for injunctive relief includes a request for a temporary restraining order, such orders are issued only rarely, when the movant proves that he will suffer injury if relief is not granted before the adverse party could be notified and have opportunity to respond. See Rule 65(b), Federal Rules of Civil Procedure. Such an order would last only until such time as a hearing on a preliminary injunction could be arranged. As it is clear from the outset that plaintiff is not entitled to a preliminary injunction, the court finds no basis upon which to grant him a temporary restraining order.

[7] Federal law provides that a prisoner may not bring a civil action without complete prepayment of the appropriate filing fee if the prisoner has brought, on three or more occasions, an action or appeal in a federal court that was dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. See 28 U.S.C. §1915(g). Plaintiff is hereby advised that this dismissal constitutes a "strike" under §1915(g).

Case 7:07-cv-00345-GEC-mfu   Document 5   Filed 07/24/07   Page 10 of 11   Pageid#: 33

plaintiff's request for injunctive relief.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to plaintiff.

ENTER: This 24th day of July, 2007.

_____
United States District Judge

11